E-FILED
Tuesday, 10 January, 2023  02:06:39 PM
Clerk, U.S. District Court, ILCD

## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **LAURENCE LOVEJOY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **No.: 22-cv-3080-MMM** |
| | ) | |
| **BRITTANY GREENE, *et al.*,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MERIT REVIEW ORDER – AMENDED COMPLAINT

Plaintiff, proceeding *pro se* and incarcerated at Western Illinois Correctional Center ("Western"), files an amended complaint under 42 U.S.C. § 1983 alleging that Defendants William Ruhl and Nathaniel Gossage retaliated against him in violation of the First Amendment. (Doc. 14). The case is before the Court for a merit review pursuant to 28 U.S.C. § 1915A. In reviewing the complaint, the Court accepts the factual allegations as true, liberally construing them in Plaintiff's favor. *Turley v. Rednour,* 729 F.3d 645, 649-51 (7th Cir. 2013). However, conclusory statements and labels are insufficient. Enough facts must be provided to "state a claim for relief that is plausible on its face." *Alexander v. United States*, 721 F.3d 418, 422 (7th Cir. 2013) (citation and internal quotation marks omitted). While the pleading standard does not require "detailed factual allegations," it requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## FACTS

Plaintiff alleges that a tactical team executed a shakedown of cells at Western on June 11, 2021. Plaintiff was sitting at the desk in his cell working on a new lawsuit when Defendant Ruhl, a correctional officer, opened his cell door, told Plaintiff to stop what he was doing, and directed him to step out of the cell. When Plaintiff asked if his legal materials would be safe, Defendant

Ruhl assured him they would be. Plaintiff alleges that Defendants Ruhl and Gossage shook down his cell, as their names appeared on the shakedown slip left in his cell.

When Plaintiff returned to his cell, his irreplaceable legal materials were gone and have never been returned to him. His legal documents included research materials, affidavits, declarations from witnesses, copies of letters sent to attorneys, memos, requests and letters sent to Warden Brittany Greene complaining about the conditions of his confinement, and other miscellaneous documents.

Plaintiff claims that Defendants Ruhl and Gossage confiscated his legal materials in retaliation for filing previous lawsuits. Plaintiff alleges that he planned to file the lawsuit he had been working on by June 14, 2021, but due to the confiscation of his legal materials, he was unable to file it.

Although Plaintiff does not name Rob Jeffreys, the Director of the Illinois Department of Corrections ("IDOC"), as a defendant, he alleges that Jeffreys failed to remedy the alleged constitutional violations described in grievances Plaintiff submitted and "turned a blind eye to it, failed to remedy it, or in some way personally participated." (Doc. 14 at 5).

Plaintiff states that he had nine conversations with Warden Greene, who is not named as a defendant, about being subjected to unconstitutional conditions of confinement. Plaintiff alleges that Warden Greene was deliberately indifferent by refusing to resolve his complaints and protect him from dangerous situations. Plaintiff alleges further that Warden Greene retaliated against him for exercising his First Amendment rights and that she conspired with Rob Jeffreys, Defendant Ruhl, and Defendant Gossage to violate his constitutional rights.

2

## ANALYSIS

### *Defendants Ruhl and Gossage*

Prisoners have a protected First Amendment right to file lawsuits and grievances. *Dobbey v. IDOC*, 574 F.3d 443, 446 (7th Cir. 2009). A prisoner may not be disciplined for filing a grievance or lawsuit as "[a]n act taken in retaliation for the exercise of a constitutionally protected right violates the Constitution." *DeWalt v. Carter*, 224 F.3d 607, 618 (7th Cir. 2000). To establish First Amendment retaliation, Plaintiff must successfully allege that (1) his speech was constitutionally protected; (2) he has suffered a deprivation likely to deter free speech; and (3) his speech was at least a motivating factor in the Defendant's action. *See Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006). Here, Plaintiff alleges that Defendants Ruhl and Gossage retaliated against him for filing prior lawsuits by confiscating his legal materials during the shakedown on June 11, 2021. As a result, Plaintiff claims he was unable to file the lawsuit he was working on. The Court finds that Plaintiff has stated a plausible First Amendment retaliation claim against Defendants Ruhl and Gossage.

### *IDOC Director Jeffreys and Warden Greene*

When the Court conducted a merit review of Plaintiff's complaint, it dismissed IDOC Director Rob Jeffreys and Warden Brittany Greene for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) and 28 U.S.C § 1915A. (Doc. 7). It is unclear if Plaintiff intended to name them as Defendants in his amended complaint, as the body of the pleading included allegations against them, but they were not named as parties. (*See* Doc. 14 at 2-3). Out of an abundance of caution, the Court will address the allegations against them.

Plaintiff claims that Jeffreys was aware of his complaints based on the grievances he filed, but he "turned a blind eye to it, failed to remedy it, or in some way personally participated." (Doc.

3

14 at 5). These conclusory statements do not establish that Jeffreys was personally involved in any constitutional deprivation, and therefore, he is not liable in his individual capacity. *See Pepper v. Vill. of Oak Park,* 430 F.3d 805, 810 (7th Cir. 2005) (citations omitted) ("[T]o be liable under [Section] 1983, an individual defendant must have caused or participated in a constitutional deprivation.").

Plaintiff alleges in a conclusory fashion that Greene retaliated against him, failed to protect him from dangerous situations, and conspired with Jeffreys and the Defendants to violate his constitutional rights. A warden cannot be held liable based solely on her involvement in the grievance process. *See Thomas v. Knight*, 196 Fed. Appx. 424, 429 (7th Cir. 2006) (explaining that a warden does not incur § 1983 liability just by participating in the grievance process). "If there is 'no personal involvement by the warden outside the grievance process,' that is insufficient to state a claim against the warden." *Neely v. Randle*, No. 12 C 2231, 2013 WL 3321451, at *3 (N.D. Ill. June 13, 2013) (quoting *Gevas v. Mitchell*, 492 Fed. Appx. 654, 660 (7th Cir. 2012)). Plaintiff also alleges that he had multiple conversations with Greene, but he provides no additional information about the conversations. *See Diaz v. McBride*, No. 3:93-CV-176RM, 1994 WL 750707, at *4 (N.D. Ind. Nov. 30, 1994) (holding that a plaintiff could not establish personal involvement, and subject a prison official to liability under § 1983, merely by sending the official various letters complaining about the actions or conduct of subordinates). The Court finds that Plaintiff's allegations are insufficient to demonstrate that Jeffreys and Greene were personally involved in any alleged constitutional violation.

Additionally, Jeffreys and Greene are not liable merely because of their supervisory positions, as the doctrine of *respondeat superior* (supervisor liability) does not apply to actions filed under § 1983. *See Pacelli v. DeVito*, 972 F.2d 871, 877 (7th Cir. 1992).

4

Accordingly, Jeffreys and Greene remain DISMISSED based on Plaintiff's failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) and 28 U.S.C. § 1915A.

**IT IS THEREFORE ORDERED:**

1)      This case shall proceed on the First Amendment retaliation claim against Defendants William Ruhl and Nathaniel Gossage based on the alleged confiscation of Plaintiff's legal materials during the shakedown on June 11, 2021. Additional claims shall not be included in the case above, except in the Court's discretion on motion by a party for good cause shown under Federal Rule of Civil Procedure 15.

2)      Plaintiff filed a Motion for Default Judgment [15] claiming that default judgment should be entered against Defendants because they failed to respond to his amended complaint. Plaintiff filed his motion before the Court conducted its merit review, and Defendants have not been served yet. Therefore, Plaintiff's Motion is premature. [15] is DENIED.

3)      Plaintiff's Motion Requesting Status of Motion for Default Judgment [16] is MOOT.

4)      This case is now in the process of service. The Court advises Plaintiff to wait until counsel has appeared for Defendants before filing any motions to give Defendants notice and an opportunity to respond to those motions. Motions filed before Defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time unless otherwise directed by the Court.

5)      The Court will attempt service on Defendants by mailing a waiver of service. If Defendants fail to sign and return a waiver of service to the Clerk within 30 days after the waiver is sent, the Court will take appropriate steps to effect formal service through the U.S. Marshal's

Service on Defendants and will require Defendants to pay the full costs of formal service pursuant to Federal Rule of Civil Procedure 4(d)(2).

6)      Defendants shall file an answer within 60 days of the date the Clerk sends the waiver of service. A motion to dismiss is not an answer. The answer should include all defenses appropriate under the Federal Rules. The answer and subsequent pleadings shall be to the issues and claims stated in this Order. In general, an answer sets forth Defendants' position. The Court does not rule on the merits of those positions unless and until Defendants file a motion. Therefore, no response to the answer is necessary or will be considered. If Defendants have not filed an answer or appeared through counsel within 90 days of the entry of this Order, Plaintiff may file a motion requesting the status of service. After Defendants have been served, the Court will enter a scheduling order setting discovery and dispositive motion deadlines.

7)      If Defendants no longer work at the address Plaintiff provided, the entity for whom Defendants worked while at that address shall submit to the Clerk Defendant's current work address, or, if not known, Defendants' forwarding address. This information shall be used only for effectuating service. Documentation of Defendants' forwarding addresses shall be retained only by the Clerk and shall not be maintained in the public docket nor disclosed by the Clerk.

8)      This District uses electronic filing, which means that after Defendants' counsel has filed an appearance, Defendants' counsel will automatically receive electronic notice of any motion or other paper filed by Plaintiff with the Clerk. Plaintiff does not need to mail to Defendants' counsel copies of motions and other documents that Plaintiff has filed with the Clerk. However, this does not apply to discovery requests and responses. Discovery requests and responses are not filed with the Clerk. Plaintiff must mail his discovery requests and responses directly to Defendant's counsel. Discovery requests or responses sent to the Clerk will be returned

6

unfiled unless they are attached to and the subject of a motion to compel. Discovery does not begin until Defendants' counsel has filed an appearance and the Court has entered a scheduling order, which will explain the discovery process in more detail.

9)    Counsel for Defendants is hereby granted leave to depose Plaintiff at Plaintiff's place of confinement. Counsel for Defendants shall arrange the time for the deposition.

10)    Plaintiff shall immediately inform the Court, in writing, of any change in his mailing address and telephone number. Plaintiff's failure to notify the Court of a change in mailing address or phone number will result in dismissal of this lawsuit, with prejudice.

11)    The Clerk is directed to set an internal court deadline 60 days from the entry of this Order for the Court to check on the status of service and enter scheduling deadlines.


ENTERED:  1/10/2023

s/ Michael M. Mihm
Michael M. Mihm
United States District Judge
